**IN THE UNITED STATES DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **CEDRIC PUGH #182373** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )  **CIVIL ACTION NO. 2:06-CV-363-MEF** |
| **ALABAMA CORRECTIONAL** | ) |
| **INDUSTRIES, COMMISSIONER** | ) |
| **BUTCH CALLOWAY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## SPECIAL REPORT

**COMES NOW** the Defendant, Tai Q. Chung, M.D., and respectfully submits his Special Report pursuant to this Court's Order of April 27, 2006.

I.      Introduction

The Plaintiff, a convicted prisoner, filed a Complaint claiming he was denied medical attention for an injury to his right middle finger. Plaintiff demands $100,000.00 compensatory damages, $100,000.00 punitive damages and demands that he be taken to another doctor for treatment and reconstructive surgery to his fingertip.

II.     The Parties[1]

a.      The Plaintiff, Cedric Pugh, is an inmate currently incarcerated at the Elmore County Correctional Facility.

b.      Dr. Tai Q. Chung is an orthopaedic surgeon in private practice in Montgomery, Alabama. Dr. Chung attended college at Princeton University and graduated with

---

[1] The plaintiff also brings claims against Alabama Correctional Industries, Commissioner Butch Calloway, Freddie Nunn, Danny Donovan, Dr. Peasant, Dr. Rios, and Prison Health Services. This Special Report only addresses the Plaintiff's claims against Dr. Tai Q. Chung.

a BA in Physics in 1975. Dr. Chung graduated from Yale University Medical School in 1979 and did his surgery internship at Stanford University Medical Center from 1979 to 1980. Dr. Chung's residency was in orthopaedic surgery and he was Board certified with the American Board of Orthopaedic Surgery in 1986, and was recertified in 1996 and 2006. He is currently licensed to practice medicine in California and Alabama.

    III.    Facts

The Plaintiff is incarcerated in the Elmore Correctional Facility, serving a 20 year sentence for robbery. He is also serving a 5 year concurrent sentence for possession of prison contraband.

On February 23, 2006, the tip of the Plaintiff's right middle finger was partially amputated by a meat grinder. (Affidavit of Dr. Chung). He was taken to the Staton Prison Health Care Unit that same day and received medical attention. (See Complaint). Mr. Pugh was then seen by Dr. Julio Rios at Baptist South where his finger was apparently cleaned and dressed. (Affidavit of Dr. Chung).

On February 27, 2006, Dr. Chung saw Cedric Pugh in his office for further care. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). It was Dr. Chung's opinion that he needed surgery to repair the finger. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). Dr. Chung discussed with Mr. Pugh the risks of surgery and the possibility of the need for a skin graft to be performed. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). On March 2, 2006, Dr. Chung performed a surgical revision of the amputation of Mr. Pugh's right middle finger. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). His injury was irrigated and explored. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). Dr. Chung removed multiple bone

chips and was able to close his wound with sutures. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). He did not require a skin graft because the wound was sufficiently closed with the sutures. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).

Dr. Chung saw Mr. Pugh again on March 13, 2006 for an office visit. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). This was a follow up of the repair of his partial amputation of his finger. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). The wound was clean. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). His sutures were removed and the wound was redressed. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). The plaintiff made no complaints about his condition to Dr. Chung. (See attached medical records from Dr. Chung dated March 13, 2006). He was told to keep the finger clean and to exercise to regain motion. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).

On October 22, 2003, Dr. Chung entered into a physician agreement with Prison Health Services, Inc. (PHS) whereby he agreed to provide orthopaedic services on a non-exclusive basis for inmates under the control of the Alabama Department of Corrections. (Affidavit of Dr. Chung; See attached contract). Under this agreement, Dr. Chung is to be considered an independent contractor, and PHS does not exercise any control over his professional practice of medicine, and PHS has retained no right of control over the manner in which Dr. Chung performs his services. (Affidavit of Dr. Chung; See attached contract).

The plaintiff acknowledges that Dr. Chung did remove chipped bone from his injured finger but complains that a skin graft was not performed. (See Complaint). The plaintiff claims that his wound was left opened and that he lost flesh from his finger and a piece of bone. (See Complaint).

3

IV.     Plaintiff's Allegations and Defendants' Response

Ground One: The plaintiff complains that his Eighth Amendment rights were violated because he did not receive a skin graft and has an open wound on his finger that has failed to heal properly. The plaintiff further claims that he was denied follow up care regarding his injury.

The skin graft referenced by the plaintiff was deemed to be medically unnecessary by Dr. Chung. Dr. Chung was able to adequately suture the finger during surgery such that a skin graft was unnecessary. Further, Dr. Chung saw the plaintiff on a follow up visit on March 13, 2006. This office visit was a follow up of the surgical repair to the finger. The doctor noted no complaints from the plaintiff. The doctor further noted that the wound was clean.

Ground Two: The plaintiff specifies that he is suing Dr. Chung in his individual and official capacity pursuant to the Eighth Amendment to the United States Constitution. However, out of an abundance of caution, this Defendant will assume the Plaintiff is making a state law claim of medical malpractice. However, there is no evidence of any malpractice by Dr. Chung. Dr. Chung's treatment of the Plaintiff met or exceeded the applicable standard of care. Dr. Chung successfully removed bone fragments from the Plaintiff's finger and successfully closed the wound with sutures. There is no evidence, expert or otherwise, that Dr. Chung committed malpractice while treating the Plaintiff.

V.     Analysis of Applicable Law

The Plaintiff brings his claims under § 1983, alleging violation of his Eighth Amendment rights. In order "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487

U.S. 42, 48 (1988). The Plaintiff has alleged a violation of his Eighth Amendment rights, and Dr. Chung was a state actor pursuant to West v. Atkins, supra.[2] However, the Plaintiff cannot establish a constitutional deprivation, nor can he establish that Dr. Chung acted with deliberate indifference to his constitutional rights.

The Eleventh Circuit has held that "deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Faison v. Rosado, 129 Fed.Appx. 490, 491 (11th Cir.2005). However, "every claim by a prisoner that he has not received adequate medical treatment…does not state a violation of the Eighth Amendment." Id. Indeed, the Eleventh Circuit has held that:

> To show an objectively serious deprivation of medical care, an inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to the need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. In addition, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference, by demonstrating (1) awareness of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the drawing of this inference. Because an inadvertent failure to provide adequate medical care does not constitute unnecessary and wanton infliction of pain, a prisoner's complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 491-492.

---

[2] The United States Supreme Court held that a doctor who is under contract to provide medical services to inmates,

In the case at bar, the Plaintiff's complaint against Dr. Chung seems to be that Dr. Chung did not perform a skin graft. Dr. Chung made the medical decision that a skin graft was unnecessary because he was able to adequately suture the wound closed during surgery. Indeed, on the March 13, 2006 follow up visit with Dr. Chung, the Plaintiff's sutures were removed, the wound was cleaned, and the Plaintiff had no complaints. That Plaintiff believes he should have had a skin graft, or any alternative treatment, is not determinative. Even if the plaintiff does not "agree with the method of treatment provided, matters of medical judgment do not give rise to a §1983 claim." Id. at 492.

It is undisputed that the plaintiff received medical care, from Dr. Chung and others. The Eleventh Circuit has noted that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).

A Montgomery federal court held that "[w]here a plaintiff does not allege that a defendant personally participated in alleged constitutional deprivations, the plaintiff must establish an affirmative causal connection between the act or omission complained of and the alleged constitutional deprivations in order to sustain a § 1983 cause of action against the defendant." Ludlam v. Coffee County, 993 F.Supp. 1421 (M.D. Ala. 1998). The plaintiff fails to identify any act or omission by Dr. Chung that resulted in a constitutional violation. Accordingly, plaintiff fails to meet the standard by which a § 1983 claim can be sustained against Dr. Chung.

---

even on a part time basis, acts under color of law when treating an inmate.

It is unclear whether the plaintiff brings a state law claim for medical malpractice against Dr. Chung. In any event, the plaintiff cannot establish any such state law claim against Dr. Chung. In order:

> to establish a cause of action for medical malpractice, a plaintiff must establish, generally by expert testimony: (1) the appropriate standard of care, (2) a breach of that standard of care, and (3) a proximate causal connection between the defendant doctor's act or omission constituting the breach and the injuries sustained by the plaintiff. Unless, the cause and effect relationship between the breach and the standard of care and the subsequent complication or injury is so readily understood that a lay person can reliably determine the issue of causation, a plaintiff must establish causation through expert testimony.

Prowell v. Children's Hospital of Alabama, 2006 WL 1304917 (Ala.2006)(internal quotations and citations omitted). The plaintiff has not and cannot establish through medical expert testimony that any act or omission by Dr. Chung violated the applicable standard of care. Indeed, Dr. Chung did not perform a skin graft on the plaintiff because in his medical opinion, it was an unnecessary procedure. Further, Dr. Chung, at all times, provided medical services to the plaintiff which met or exceeded the applicable standard of care.

VII.  Immunity

    a.  Immunity Under Article 1 § 14 of the Alabama Constitution of 1901

"When Article 1, § 14 Alabama Constitution of 1901, has been violated, a trial court is without jurisdiction to entertain the action and the action must be dismissed." Sholas Community College v. Colagross, 674 So.2d 1311 (Ala. Civ. App. 1995). The Alabama Constitution mandates that "the State and its agencies have absolute immunity from suit in any court." Id. (citing Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989)). State officers "in their official capacities and individually, are also absolutely immune from suit when the action is, in

7

effect, one against the state." Colagross, 674 So.2d at 1313 to 1314 (citing Phillips v. Thomas, 555 So.2d at 83). Because Dr. Chung is considered a state actor for the purposes of § 1983, the action against him is an action against the state. Accordingly, summary judgment is due to be granted to him with respect to any state law claims pursuant to Article 1, § 14 of the Alabama Constitution of 1901.

      b.      Substantive Immunity

The Alabama Supreme Court has held that the "doctrine of substantive immunity may yet be invoked if the official or employee (1) is engaged in the exercise of a discretionary function; (2) is privileged and does not exceed or abuse the privilege; or (3) is not negligent in his responsibility." DeStafney v. University of Alabama, 413 So.2d 391 (Alabama 1981). The Alabama Supreme Court has further noted that state officers or employees are entitled to substantive immunity "if they were engaged in the exercise of a discretionary function." Nance by and through Nance v. Matthews, 622 So.2d 297 (Ala. 1993). The Court noted that Black's Law Dictionary defines discretionary acts as "those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion…one which requires exercise in judgment and choice and involves what is just and proper under the circumstances." Id. (citing Black's Law Dictionary 419 (5th Ed. 1979)). Dr. Chung acted within his discretion when providing medical attention to Plaintiff, and accordingly, is entitled to substantive immunity for any state law claims.

      c.      Official Capacity Immunity

The United States Supreme Court has held that "a state is not a person within the meaning of § 1983." Will v. Michigan Depart. Of State Police, 491 U.S. 58 (1989). The Court has further held that "§ 1983 provides a federal forum to remedy many deprivations of civil

liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties." Id. The court went on to note that "suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. The Court, therefore, held that "neither a state nor its officials acting in their official capacities are persons under § 1983." Id. In his Complaint, the Plaintiff specifies that he brings the action against the Defendants in their individual and official capacities. Because Dr. Chung, at all material times hereto was a state actor, acting in his official capacity, he is not subject to liability pursuant to § 1983.

There was no deliberate indifference by Dr. Chung. Dr. Chung was a state official acting in good faith and is immune from suit under Article I, § 14 of the Alabama Constitution of 1901 and in accordance with the doctrine of substantive and official capacity immunity.

VII.   Conclusion

The Plaintiff is asking this Court to award him compensatory and punitive damages in the amount of $200,000.00. Plaintiff has failed to prove any constitutional deprivation and has failed to set forth any evidence of denial of medical attention and/or adequate medical care.

VIII.   Motion for Summary Judgment

The Defendant respectfully requests this Honorable Court to treat his Special Report as a Motion for Summary Judgment and grant the same unto him.

Respectfully submitted this 6th day of June, 2006.

/s/ E. Ham Wilson, Jr.
Attorney for Tai Q. Chung, M.D.

OF COUNSEL:

BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334)387-7680

## CERTIFICATE OF SERVICE

I hereby certify that on this June 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jason Matthew Bledsoe
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130

The following person, not registered with the CM/ECF system, was served by U.S. mail:

Cedric Pugh #182373
Elmore Correctional Facility
P.O. Box 8
Elmore, AL 36025

by placing same in the U.S. mail postage prepaid on this the 6th day of June, 2006.

/s/ E. Ham Wilson, Jr.
OF COUNSEL