## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **CEDRIC PUGH,** | ] | |
| | ] | |
| **Plaintiff** | ] | |
| | ] | |
| **v.** | ] | **CASE NO. 2:06-CV-00363-MEF-VPM** |
| | ] | |
| **BUTCH CALLOWAY, FREDDIE NUNN,** | ] | |
| **DANNY DONOVAN, M.D. PEASANT,** | ] | |
| **PRISON HEALTH SERVICES, INC.,** | ] | |
| **TAI Q. CHUNG and JULIO E. RIOS.** | ] | |
| | ] | |
| **Defendants.** | ] | |

### AFFIDAVIT OF TAI Q. CHUNG

Before me, the undersigned authority, on this day personally appeared Tai Q. Chung who being by me first duly sworn, deposed and stated upon his oath the following:

My name is Tai Q. Chung. I am over the age of 21 years. I have personal knowledge of the following:

I am, and at all material times hereto have been, an orthopaedic surgeon in private practice in Montgomery, Alabama. I attended college at Princeton University and graduated with a BA in Physics in 1975. I graduated from Yale University Medical School in 1979 and did my surgery internship at Stanford University Medical Center from 1979 to 1980. My residency was in orthopaedic surgery and I was Board certified with the American Board of Orthopaedic Surgery in 1986, and was recertified in 1996 and 2006. I am currently licensed to practice medicine in California and Alabama.

On October 22, 2003, I entered into a physician agreement with Prison Health Services, Inc. (PHS) whereby I agreed to provide orthopaedic services on a non-exclusive basis for inmates under the control of the Alabama Department of Corrections. Under this agreement, I am to be considered an independent contractor and PHS does not exercise

any control over my professional practice of medicine and PHS has retained no right of control over the manner in which I perform my services.

On February 27, 2006, I saw Cedric Pugh in my office. His right middle finger had been caught in a meat grinder about four days prior to this office visit. He had been seen at Baptist South where his finger was apparently cleaned and dressed. He came to me for further care. There was a partial amputation of the pulp of his right middle finger. It was my opinion that he needed surgery to repair the finger. I discussed with him the risks of surgery and the possibility of the need for a skin graft to be performed. On March 2, 2006, I performed a surgical revision of the amputation of Mr. Pugh's right middle finger. His injury was irrigated and explored. I removed multiple bone chips and was able to close his wound with sutures. He did not require a skin graft because the wound was sufficiently closed with the sutures.

I saw Mr. Pugh again on March 13, 2006 for an office visit. This was a follow up of the repair of his partial amputation of his finger. The wound was clean. His sutures were removed and the wound was redressed. He was told to keep the finger clean and to exercise to regain motion.

The medical services I provided to Mr. Pugh met the applicable standard of care for orthopaedic surgery. I did not perform a skin graft because in my medical opinion, it was an unnecessary procedure. At all times, I provided medical services to Mr. Pugh which met or exceeded the applicable standard of care.

TAI Q. CHUNG

STATE OF ALABAMA
COUNTY OF _____

Before me, the undersigned Notary Public, did personally appear TAI Q. CHUNG who states to me that he is aware of the contents of the foregoing document, and that he did execute it voluntarily.

SWORN TO and SUBSCRIBED before me on this the 2nd day of June, 2006.

_____
NOTARY PUBLIC
My commission expires: _04/07/07_