IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CEDRIC PUGH, (AIS# 182373), | * | |
| Plaintiff, | * | |
| V. | * | 2:06-CV-363-MEF |
| ALABAMA CORRECTIONAL INDUSTRIES COMMISSIONER BUTCH CALLOWAY, et al. | * | |
| | * | |
| Defendants. | * | |

## SPECIAL REPORT OF DEFENDANTS PRISON HEALTH SERVICES, INC. AND JOHN PEASANT, M.D.

COME NOW the Defendants, Prison Health Services, Inc. (hereinafter referred to as "PHS") and John Peasant, M.D., in response to this Honorable Court's Order and present the following Special Report with regard to this matter:

### I. INTRODUCTION

The Plaintiff, Cedric Pugh (AIS# 182373) is an inmate confined at Elmore Correctional Facility located in Elmore County, Alabama.[1] On April 21, 2006, Pugh filed a Complaint against Defendants PHS, the company that currently contracts with the Alabama Department of Corrections to provide healthcare to inmates within the State of Alabama, and John Peasant, M.D., Staton's Medical Director, alleging that these Defendants violated his constitutional rights by denying him appropriate medical evaluation and/or treatment for a finger injury sustained on February 23, 2006. (See

---

[1] Elmore Correctional Facility does not have an infirmary. Therefore, Mr. Pugh is treated by Dr. Peasant at neighboring Staton Correctional Facility.

Complaint). The Plaintiff demands $100,000.00 in compensatory damages, $100,000.00 in punitive damages and injunctive relief. (Id.)

As directed, the Defendants have undertaken a review of Plaintiff Pugh's claims to determine the facts and circumstances relevant thereto. At this time, the Defendants are submitting this Special Report, which is supported by a Certified Copy of Plaintiff Pugh's medical records (attached hereto as Exhibit "A") and the Affidavit of John Peasant, M.D. (attached hereto as Exhibit "B"). These evidentiary materials demonstrate that Plaintiff Pugh has been provided appropriate medical treatment for his finger injury at all times, and that the allegations in his Complaint are without merit.

## II. NARRATIVE SUMMARY OF FACTS

At all pertinent times, Cedric Pugh (AIS# 182373) has been incarcerated as an inmate at Elmore County Correctional Facility. (See Exhibits "A" & "B"). Pugh has been seen and evaluated by Staton's medical or nursing staff, and has been referred to an appropriate care provider and given appropriate care, each time he has registered any health complaints at Staton. (Id.)

Mr. Pugh has made a complaint in this matter that the Defendants failed to provide him with appropriate medical treatment and/or evaluation subsequent to sustaining injury to the middle finger of his right hand. (See Complaint). The Plaintiff's allegations are untrue, however, as the Defendants have acted appropriately in treating and evaluating this inmate at all times.

On February 23, 2006, Mr. Pugh presented to the healthcare unit at Staton having suffered an injury to the 1/3 outer aspect of the middle finger of his right hand. (See Exhibits "A" & "B"). Mr. Pugh stated that he had inadvertently caught his finger in a

2

meat mixer. (Id.) The wound was cleansed and bandaged. (Id.) He was afforded a tetanus shot as well as Motrin and Percogesic for pain. (Id.) He was subsequently transported to Baptist South Hospital for evaluation and treatment. (Id.) At Baptist South, Mr. Pugh's wound was again cleaned and a sterile dressing was applied. (Id.) He was prescribed Lortab for pain and a follow up appointment was recommended. (Id.)

Subsequent to being treated at Baptist South, Mr. Pugh returned to Staton and was admitted to the medical observation unit for observation. (Id.) During observation he was afforded Keflex (an antibiotic) as well as Lortab and Motrin. (Id.) The next day, February 24, 2006, Dr. Peasant evaluated Mr. Pugh and ordered x-ray evaluation of his injured finger. (Id.) Mr. Pugh's x-ray showed mild deformity of the distal phalanx of the right middle finger. (Id.) Acute fracture could not, however, be completely excluded. (Id.)

On February 27, 2006, Mr. Pugh was transferred for orthopedic evaluation to Dr. Tai Q. Chung pursuant to the recommendation of Mr. Pugh's treating physician at Baptist South. (Id.) Dr. Chung provided Mr. Pugh with physical evaluation and determined that repair with debridement was necessary to secure the wound. (Id.) Dr. Chung performed surgical debridement and repair on March 2, 2006. (Id.) Mr. Pugh was again admitted to Staton's medical observation unit for treatment and observation. (Id.)

Mr. Pugh was started on IV antibiotics on March 7, 2006 to treat infection. (Id.) He forcibly removed his IV that same day. (Id.) IV antibiotics were restarted on March 9th without complaint. (Id.) On March 13th Mr. Pugh was again referred to Dr. Chung for follow-up evaluation of his debridement. (Id.) Dr. Chung removed his sutures and noted a clean wound. (Id.) Supplemental x-rays of Mr. Pugh's finger were ordered on March 14th which showed a fracture of the distal tuft without significant displacement of fracture

3

fragments. (Id.)  One day later, on March 15th, Mr. Pugh's IV antibiotics were discontinued due to complaints of itching and swelling. (Id.)  Mr. Pugh was transferred to Dr. Chung a third time for evaluation on June 1, 2006 where it was noted that Mr. Pugh's wound was healing well. (Id.)

In order to combat possible infection of Mr. Pugh's finger injury, he has been prescribed numerous oral antibiotics including Keflex, Rifampin and Bactrim. (Id.) These medications have been adjusted as warranted by his changing condition. (Id.)

In order to make Mr. Pugh's incarceration more comfortable, he has been afforded numerous specialty profiles including a "finger soak" profile, a "work stop" profile, a "no use of right hand," profile and an "elevated right hand" profile. (Id.)

All of Mr. Pugh's medical conditions and complaints have been evaluated in a timely fashion at Staton Correctional Facility, and his diagnosed conditions have been treated in a timely and appropriate fashion.  At all times, he has received appropriate medical treatment for his health conditions at Staton.  At no time has he been denied any needed medical treatment.

In other words, the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate.  At no time have either of the Defendants or any of the medical or nursing staff at Staton Correctional Facility, denied Mr. Pugh any needed medical treatment, nor have they ever acted with deliberate indifference to any serious medical need of Mr. Pugh.  At all times, Mr. Pugh's known medical complaints and conditions have been addressed as promptly as possible under the circumstances.

## III. DEFENSES

The Defendants assert the following defenses to the Plaintiff's claims:

1. The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2. The Defendants plead not guilty to the charges in the Plaintiff's Complaint.

3. The Plaintiff's Complaint fails to state a claim against the Defendants for which relief can be granted.

4. The Defendants affirmatively deny any and all alleged claims by the Plaintiff.

5. The Plaintiff is not entitled to any relief requested in the Complaint.

6. The Defendants plead the defense of qualified immunity and aver that the actions taken by the Defendants were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

7. The Defendants are entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Defendants have violated any clearly established constitutional right.

8. The Defendants cannot be held liable on the basis of <u>respondeat superior</u>, agency, or vicarious liability theories.

9. The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

10. The allegations contained in the Plaintiff's Complaint against the Defendants sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual

capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

11. The Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

12. The Defendants aver that they were at all times acting under color of state law and, therefore, they are entitled to substantive immunity under the law of the State of Alabama.

13. The Defendants plead the general issue.

14. This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

15. The Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

16. Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

17. The Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other physicians and nursing staff would have exercised under similar circumstances and that at no time did they act toward the Plaintiff with deliberate indifference to a serious medical need.

18. The Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and

omissions alleged to render him liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

19. The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

20. The Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

21. The Defendants plead the affirmative defense that they are not responsible for the policies and procedures of the Alabama Department of Corrections.

22. The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

23. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against them and that any such award would violate the United States Constitution.

24. The Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

25. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The Plaintiff has failed to pursue the administrative remedies available to him. See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning Defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

26. The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of Plaintiff's claims herein as this action is frivolous, malicious,

fails to state a claim upon which relief can be granted, or seeks money damages from the Defendants who are entitled to immunity.

27. The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

28. The Plaintiff has failed to comply with 28 U.S.C. § 1915_with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

29. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

30. The Defendants assert that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court pursuant to 42 U.S.C. § 1988 to award these Defendants reasonable attorney's fees and costs incurred in the defense of this case.

31. The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See Marie v. Nickels, 70 F., Supp. 2d 1252 (D. Kan. 1999).

## IV. ARGUMENT

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of Pugh's medical records reveals that Pugh has been given appropriate medical treatment at all times. (See Exhibits "A" & "B"). All of the allegations contained within Pugh's Complaint are either inconsistent with his medical records, or are claims for which no relief may be granted. (Id.) Therefore, Pugh's claims against the Defendants are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, Pugh must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Pugh must allege and prove that he suffered from a serious medical need, that the Defendants were deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of Pugh's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Pugh cannot carry his burden. The evidence submitted with this Special Report clearly shows that the Defendants did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that appropriate standards of care were followed at all times. (Id.) These facts clearly disprove any claim that the Defendants acted intentionally or recklessly to deny treatment or care.

The Defendants are, further, entitled to qualified immunity from all claims asserted by Pugh in this action. There is no argument that the Defendants were not acting within the scope of their discretionary authorities. See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because the Defendants have demonstrated that they were acting within the scope of their

discretionary authorities, the burden shifts to Pugh to show that the Defendants violated clearly established law based upon objective standards. Eubanks, 40 F. 3d at 1160. The Eleventh Circuit requires that before the Defendants' actions can be said to have violated clearly established constitutional rights, Pugh must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)). The question that must be asked is whether the state of the law in 2006 gave the Defendants fair warning that their alleged treatment of Pugh was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, Pugh must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendants to the fact that their practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances."

11

Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Pugh's constitutional rights. All of Pugh's medical needs have been addressed or treated. (See Exhibits "A", "B" & "C"). The Defendants have provided Pugh with appropriate medical care at all times and he has been transferred for specialty evaluation as indicated. (Id.)

Finally, pursuant to the Court's Order, the Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden.

## V. CONCLUSION

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. Accordingly, the Defendants request that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in their favor.

          Respectfully submitted,

          s/L. Peyton Chapman, III
          Alabama State Bar Number CHA060
          s/R. Brett Garrett
          Alabama State Bar Number GAR085
          Attorneys for Prison Health Services,
          Inc. and John Peasant, M.D.

          RUSHTON, STAKELY,
          JOHNSTON & GARRETT, P.A.
          Post Office Box 270
          Montgomery, Alabama  36101-0270

          Telephone: (334) 834-8480
          Fax: (334) 262-6277
          E-mail: bg@rsjg.com

## **CERTIFICATE OF SERVICE**

I hereby certified that I have mailed via U.S. mail, properly addressed and first-class postage prepaid, the foregoing document this 27th day of June, 2006, to the following:

Cedric Pugh (AIS# 182373)
Elmore Correctional Facility
P.O. Box 8
Elmore, AL 36025

          s/R. Brett Garrett
          Attorney for Prison Health Services,
          Inc. and John Peasant, M.D.